Allen, J.
There having been no appeal from the Special to the General Term of the Supreme Court from the order denying the motion for a new trial, the court, at General Term, had jurisdiction only of the appeal from the judgment.. The order refusing a new trial was not before the court, and reviewable as an intermediate order involving the merits, and necessarily affecting the judgment within section 11, subsection 2 of the Code.
Errors of law alone, arising upon exceptions taken upon the trial, were, therefore, before the Supreme Court, and proper causes for reversing the judgment and granting a new-trial, and the order is reviewable upon appeal to this court. Had the defendant desired a review of the facts by the Supreme Court at General Term, and sought a new trial upon the ground that the verdict was against evidence, or for an)r cause other than an error of law, there should have been an *329 appeal from the order of the court at Special Term denying the motion, and had such appeal been brought, with or without an appeal from the judgment, and the judgment and order been reversed, and a new trial granted, no appeal could have been taken to this court. The practice, in this and other like cases, has been very frequently before this court, and is well settled. (Wright v. Hunter, 46 N. Y., 409; Sands v. Crooke, id., 564; Dickson v. Broadway, etc., R. R. Co., 47 id., 507.)
The defendant moved for a nonsuit at the close of the plaintiff’s case, and again at the close of the trial, substantially upon the same grounds, viz: First. That the evidence did not show negligence on the part of the defendant. Second. That the evidence did show negligence of the plaintiff contributing to the injury; the defendant insisting that the plaintiff, although an infant, must show a compliance with the conditions on which his right of action rests, irrespective of age, and that it is no excuse for negligence that he is an infant.
The injury to the plaintiff was occasioned by his being thrown down by one of the horses attached to defendant’s railway car, and run over by the car while he was in the act of crossing “ Boston road,” in the town of Morrisiania, a part of which road is occupied by the railway of the defendant. The accident occurred at mid-day, and the plaintiff and his associates were in plain view, from the front platform of the car, for a long distance before reaching the point of collision. He and his associates were seen by the persons in the car, and by those on the platform with the driver, and by the individual who was acting as driver up to about the very instant of collision. The lines and the control of the team and the brake were given over to the regular driver but a brief moment of time before the accident, and while the plaintiff and the other boys were in plain view crossing the street.
They were actually seen by the person surrendering the management of the team. Had the driver looked he could *330 and would have seen them. He says he did not, but if he did not it was because he was inattentive to his duty.
Murphy, who had been driving, would, doubtless, have informed him of the presence and possible danger .of the boys had he supposed he did not see them. Hot to hav.e done so would have been a culpable omission of duty. The car was running on an up grade at the rate of about six miles an hour, and'was under perfect control. All the witnessés agree that it might have been stopped while running over the space of a few feet, and a very slight check in the speed at which it was running would have prevented the collision and consequent injury. It would not have been necessary to bring the car to an absolute rest. There is also evidence, by several witnesses, that, after the plaintiff was thrown down by coming in contact with the horse, the car might have been stopped before the wheel of the car reached him, and thus any serious injury prevented. Hpon this point the evidence was conflicting.
Had the defendant’s servant, acting as driver of the team attached to the car, been reasonably vigilant, or even exercised the very lowest degree of care required of those performing such a service, he would have seen the plaintiff, and could, by a very slight effort, have entirely arrested or checked the progress of the car and avoided the injury. This could have been done without inconvenience or causing material delay to the passengers, and his omission to perform this slight duty was culpable negligence, for which the defendant must respond, unless it appears, from the whole case, that the injury is not attributable to that cause. A verdict of the jury acquitting the defendant of negligence would have been against evidence.
The next question is, whether negligence, on the part of the plaintiff, contributory to the injury, was conclusively shown, that is, so clearly and conclusively established that the court should have taken the case from the jury and granted a nonsuit for that reason. It is not enough, to authorize a nonsuit, that there is evidence which would have warranted *331 the jury in finding that the plaintiff was negligent, and that his negligence contributed to the injury. The question of negligence depends very much upon circumstances, and is addressed to the judgment of men of ordinary prudence and discretion, and is ordinarily for the jury. When the inferences to be drawn from the proof are not certain and incontrovertible it cannot be decided as a question of law by directing a verdict or nonsuit, but must "be submitted to the jury.
Negligence is a question of fact and should usually be decided as such, especially whenever men of ordinary prudence and discretion might differ as to the character of the act, under the circumstances of the case, the positions and condition of the parties. If the plaintiff had been of mature years and of ripe judgment it would still have been a question for the jury whether it was prudent and proper for him, in the exercise of that ordinary care which he was called upon to use, to attempt to cross the street in front of the defendant’s car. The actual result does not necessarily condemn the attempt as rash, or even negligent. It may only prove an error of judgment, and in such case it is for the jury to say whether a man of ordinary prudence and discretion might not, under the same circumstances, have formed and acted upon the same judgment. The two companions of the plaintiff passed over in safety, and he only failed to escape the peril by a hair’s breadth in space and the briefest moment of time. He was lawfully in the street, and crossing it for a proper purpose, and he mistook, very slightly, as to having time to pass over before the car should reach the point of his crossing. It would have been error to decide, as matter of law, that the attempt to cross the street was, under the circumstances, per se negligence. A similar question was before this court in Bernhard v. Rensselaer and Saratoga Railroad Company (1 Abb. Ct. of App. Dec., 131), and the judgment of Judge S. L. Selden in that case, adopted by the court, full sustains the refusal of the judge at circuit to non-suit the plaintiff. To the same effect is the case of Belton v. *332 Baxter (58 N. Y., 411), before this court on a second appeal, and decided in October, 1874. So, also, Hackford v. N. Y. C. and H. R. R. R. Co. (53 N. Y., 654). If the character of an act, by which one exposes himself to peril, is to be judged by its result alone, a person would, in most cases, be condemned as negligent who should voluntarily place himself in a position of possible danger and harm should come to zhim. The motion for a nonsuit was properly denied.
The judge, at the Circuit, submitted the questions of negligence, as well that of the plaintiff as of the servant of the defendant, to the jury, instructing them, in substance, that if they should find that the latter was negligent, in the omission of any act or reasonable precaution, which, if performed, would have avoided the accident, they must, nevertheless, pass upon the acts and conduct of the plaintiff; and that if he omitted any reasonable precaution in attempting to cross the street, at the time and under the circumstances in evidence, and was himself guilty of negligence, he could not recover. The defendant seems to have excepted to some part of the charge, but to what part cannot be ascertained from the record. We may conjecture what is probably true, that the exception to the refusal to charge in accordance with the third request presents the question which would have been before us upon the exceptions to the charge as delivered if it had been properly taken and incorporated in the case and exceptions. That request was for an instruction to the jury that the plaintiff, although a boy, is held answerable for the same degree of prudence and foresight, in avoiding an injury, as an ordinary prudent person would be.
The judge had charged the opposite of this, and in substance that a person of feeble understanding is not held to the same degree of dilgence or vigilance, as a person of better understanding, and that a lad of the age of this young boy, is not held to the same degree of vigilance that would be required of a mature and adult person, and that it was to be determined by the jury in the exercise of their common sense, whether the boy considering that he was but seven years of *333 age, omitted any reasonable precaution and was guilty of negligence. Whether he should have seen the car and might, with the understanding he possessed and under the circumstances of the case, have avoided the accident, and if so, such omission would be fatal to his recovery.
No claim was made, upon the trial, and could not have been properly made upon the evidence that it was improper, and an act of negligence on the part of his parents to permit him to go abroad and to his school without the protection of some elder person to look after and care for him. It was assumed that he was properly by himself and on his way to school at the time of the injury, and was only answerable for his own acts and omissions. The doctrine of imputable negligence which is recognized in this and some other States was not urged or mentioned upon the trial.
That doctrine was established in this State, in the leading case of Hatfield v. Roper (21 Wend., 615), and has been applied uniformly since, whenever the question has arisen and has been adopted in other States. The rule is, that a child of tender years and who is not sui juris, who is negligently suffered by his parents to run at large, and thereby is placed in the way of being harmed, cannot recover for injuries received through the negligence of others. The want of care and omission of duty of the parents, are regarded as contributory to the injury, and this neglect is imputed to the child, and there is no redress for him. This want of care on the part of the parent or guardian, furnishes the same answer to an action by the child as would the omission of proper care, on the part of the plaintiff in action by an adult. (Willetts v. Buffalo and Rochester R. Co., 14 Barb., 585; Honegsberger v. Second Ave. R. Co., 33 How. Pr., 193; S. C., 1 Keyes, 570; Mangam, v. Brooklyn R. Co., 38 N. Y., 455; Wharton on Negligence, § 311 and note 1.) The doctrine is not applicable to a child of the age and capacity of the present plaintiff. (Drew v. Sixth Ave. R. R. Co., 26 N. Y., 49; McMahon v. The Mayor, etc., of N. Y., 33 N. Y., 642.) It is not sought to' apply the principle of this class *334 of cases here. The plaintiff is only sought to be held responsible for his own negligence, and the question is whether he is only to be held to that ordinary or reasonable care and caution which might reasonably be expected from boys of his own age under the same circumstances, or whether he is to be held to the full measure of prudence which the law exacts from adults in the possession of all their faculties. In a single case in this State (Honegsberger v. Second Ave. R. Co., supra), it is said by the learne'd judge speaking for the court (three judges dissenting) that he knew of but one rule on the subject, and he thought it applied to all persons without exception, and makes no discrimination on account of age, and continued: “ It is that degree of care which a person of ordinary prudence would exercise in the situation supposed.” This case is not reported in the regular series of reports of this State, and probably for the reason that the principle decided was thought to be at least doubtful, and might not be followed as a precedent. The whole current of authority measures the degree of care exacted of an individual as well by his capacity as the circumstances in which he is placed (Lynch v. Nurdin, 1 A. & E. [N. S.], 29), might possibly have been brought within the principle of Hatfield v. Roper (supra). But the action was sought to be defeated on the ground of actual negligence of the plaintiff, and by reason of his being a trespasser. He was a wrong-doer and was upon the cart of the defendant without right, the defendant having carelessly left his horse and cart unfastened, and the boy plaintiff, seven years old, was injured by the starting of the horse through the wrongful acts of other boys. Lord Denman, C. J., recognized the rule that one cannot recover for injuries, although the result of the negligent act of others, if he is a co-operating cause of his own misfortune, but only held the plaintiff' to that degree of. care which might reasonably be expected from a person in his situation, and added, “ this would evidently be very small, indeed, in so young a child.” The court took into consideration and made allowance for the natural instinct of the child, and were of opinion that he had shown the posses *335 sion and exercise of prudence and discretion in as great a degree as could have been expected, and held that the case had been properly submitted to the jury and sustained the verdict for the plaintiff. This case is open to the criticism that the parents of the child were negligent in suffering him to run about the streets and in a crowded thoroughfare unattended. But in so far as it graduates the degree of care demanded of those exposed to peril from the acts of others by the age and capacity of individuals when the actual negligence of the party is involved, it has not been questioned so far as I have observed. A request to charge similar to that under consideration was made and refused in Sheridan v. Brooklyn City and Newtown R. Co. (36 N. Y., 39), but the defendant added to the request that if the plaintiff was not of years of discretion he should have- had a protector. The court held that the request was too broad and asked too much, and therefore overruled the exception without directly passing upon the question now before us. But the opinion was prepared by the learned judge, now an associate justice of the Supreme Court of the United States, who spoke for the court, in Railroad Company v. Gladman (15 Wall., 401) and Railroad Company v. Stout (17 id., 657), so that we may well infer that had it been necessary to decide the question the exception would have been overruled on its merits.
• In both of the eases cited from the reports of Hr. Wallace, the court expressly adjudged that the rule of law in regard to the negligence of an adult and of an infant of tender years was quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. Of an infant of tender years less discretion is required, and' the degree depends on his age and knowledge. The caution required is according to the maturity and capacity of the child, a matter to be determined in each case by the circumstances of that case. In Gladmon’s Case the plaintiff, a boy seven years of age, was injured in attempting to run across the street in front of an approaching street car, and the driver being inattentive *336 to his duty did not see him, as he might have done, with reasonable vigilance. Stout’s Case was somewhat different in circumstances, but turned upon an application of the same principle and the same rule was applied.
That the measure and degree of care, the omission of which would constitute negligence, is to be graduated by the age and capacity of the individual, is expressly adjudged in Birge v. Gardiner (19 Conn., 507); Daley v. Norwich and Worcester Railroad Company (26 id., 591); Robinson v. Cone (22 Vt., 213). Judge Andrews asserts the same doctrine in Reynolds v. New York Central Railroad Company ,* recently decided by the court, the other judges concurring. He cites, in support of the proposition, O’Mara v. Hudson River Railroad Company (38 N. Y., 445); Mowrey v. Central City Railroad Company (51 id., 666). (See, also, per Rapallo, J., Ihl v. Forty-second Street, etc., Railroad Company, 47 N. Y., 317.) This is in harmony with the well established rule, that persons in sudden emergencies, and called to act under peculiar circumstances, are not held to the exercise of the same degree of caution as in other cases; and with another principle asserted by courts, that carriers of persons for hire are called upon to care more tenderly and prudently for the aged, the infirm and the partially helpless than for the vigorous and healthy of their passengers.
There is no other exception that calls for consideration. The j udge did charge that the law was as stated by the counsel for the defendant in his ninth request to charge, and .that the plaintiff did see the approaching car as he crossed the street.
It was still a question for the jury, whether crossing the street was a negligent and careless act under the circumstances.
We concur in the dissenting opinion of Judge Barnard in the Supreme Court.
The order granting a new trial should be reversed and the judgment on the verdict affirmed.
All concur; Rapallo, J., not voting.
Order reversed and judgment accordingly.

58 N. Y., 349.