## CLARA A. DAVENPORT, Respondent, *v.* ELISHA RUCK-MAN, AND THE MAYOR, ALDERMEN, AND COMMONALTY OF THE CITY OF NEW YORK.

*Corporation—Safety of Streets—Liability—Lessee of Lot on Street—Excavation.*

The streets or sidewalks in a city are for the benefit of all classes and conditions of people; and they are at liberty to regulate their conduct in respect thereto, upon the assumption that they are in good condition.

The Corporation are liable for injuries inflicted upon persons passing along the streets or sidewalks of the city, in consequence of the dangerous condition of such streets or sidewalks, whether such injury arises from some act done by the Corporation, or from some omission of duty on their part.

The lessee of premises upon which the sidewalk is out of repair, by reason of an opening therefrom into the cellar on said premises, may be liable although the premises are at the time in the occupation of a sub-tenant who had agreed to keep the walk or premises in repair.

THIS was an action brought to recover damages for injuries sustained by the Plaintiff in falling into an excavation made in the sidewalk of a public avenue in the city of New York, and not sufficiently guarded, in front of a building on such avenue, of which the Defendant Ruckman had a lease, and of which building he was the owner.

The excavation in question was a cellar-way, below the level of the pavement, extending on the sidewalk six feet in front of the line or side of the street, with descending steps to a cellar-way in the front wall of a building. It was not covered, or railed in, at the time of the accident, and had been in the same condition for some time previous. It had been once enclosed by wooden doors, and at another time by an iron railing, which had long previously been removed.

The Defendant Ruckman did not make the excavation, but was the assignee of a lease, for twenty-five years, of the premises behind it, into which the steps in it led, and, by such lease, owner of the buildings to be erected during the term. They were occupied at the time of the accident by a tenant of his (Lamb),

with whom he agreed to put the premises in repair. The Defendant Ruckman never repaired the premises, was frequently there to collect his rents, and paid his own.

The Plaintiff's organs of sight, at the time of the accident, were affected by disease, so as to diminish her powers of vision considerably; yet she could distinguish persons and colors, and objects having a " distinct outline."

A verdict having been rendered for the Plaintiff, with damages, various exceptions, taken on the trial, were ordered to be heard, first at General Term.

One exception was taken to a refusal to dismiss the complaint, and others to instructions to the jury, and refusal to charge as requested.

The counsel for the Defendants, the Corporation of the City of New York, requested the Court, among other things, to charge, in substance, in reference to their duty, as follows:

First: They were not bound to see that such an opening as that into which the Plaintiff fell was closed in the daytime.

Second: They were not bound to see that the streets were in such a condition as to be safe for a blind person to pass, without a guide.

Third: They were not liable, unless the opening into which the Plaintiff fell was of such a character as to have been dangerous to persons in possession of their sight, and exercising ordinary care.

And in reference to the conduct and negligence of the Plaintiff:

First: She was bound to use more than ordinary care in passing along the sidewalk.

Second: It was negligence for her to walk alone upon the sidewalk, without a guide, if she was unable to determine for herself whether it was free from obstructions or excavations.

The counsel for the Defendant Ruckman requested the Court to charge the jury, in substance, among other things, in reference to his liability for the injury to the Plaintiff:

First: That he was not in possession of the premises at the

time, but his tenant, Lamb, was, who had been so for six days before the date of the lease to him, and was bound by his lease to keep the premises in repair.

Second : That Mitchell or Lovett owned them in fee.

Third : That the Defendant knew nothing of the removal of a railing adjoining the excavation in question, and was prevented from repairing by Lamb ; and also, in reference to the condition of the excavation, that the Plaintiff could not recover, unless a person with ordinary vision, using ordinary care and prudence, passing along the sidewalk in broad daylight, would be unsafe or liable to be injured from the unsafe condition of the area ; and

Lastly : That the Plaintiff was guilty of negligence in going into a public street in her condition.

The Court instructed the jury, as to the duty of the corporation in reference to excavations of this kind, that it was " their duty to see that places of that description were kept in a safe condition ; " there was, in the ordinance passed by them, " an implied permission to construct them in the manner prescribed ; " and when made with such permission, they are " responsible for injuries necessarily resulting from them ; " " it is their duty to see that such places are maintained in a proper and safe condition ; " and, in reference to their being chargeable with notice of " the dangerous condition of any such opening," that, " if it had been a recent occurrence, . . . an express notice of some kind to them would be required, but where the dangerous condition of the street or sidewalk has continued for a long space of time, such express notice is not necessary ; " they " may be reasonably presumed to have become acquainted with the condition of the street in this particular."

They have ample means and every facility secured to them for fulfilling their duties, and seeing that all dangerous places in the public streets are properly guarded ; they are bound to fulfil that duty, and, if they neglect it, are to be held responsible.

In reference to the Plaintiff's negligence in going into the street unattended, in the actual condition of her organs of sight, the Court charged the jury, " that the circumstance that she was

partially blind, and fell into this opening in the daylight, was not of any importance." The question was, " whether it was so improper and imprudent for the Plaintiff to have gone into the street unattended, in her then condition of sight, that it would be negligence on her part to do so." But if she "possessed sufficient sight to give her a reasonable assurance that she might travel the streets safely, while they were in a good and proper condition—in the condition in which the Defendants were bound to maintain them—she would not be guilty of negligence in going abroad unattended."

" The assumption in law must be that the streets are in good condition, and the question to be determined by the jury" was, " Had the Plaintiff sight enough to go with reasonable assurance of safety through the streets," if they were kept in good condition ?

To these conditions the Defendants' counsel excepted.

The Court instructed the jury, also, that the Defendant Ruckman was to be considered the owner of the house, and it was " his duty to provide proper guards for the opening, and see that it was safely kept."

To these instructions the Defendant Ruckman's counsel excepted.

The General Term ordered judgment for the Plaintiff upon the exceptions, from which judgment the Defendant now appeals to this Court.

*H. H. Anderson* for Appellants.
*William Tracy* for Respondent.

HUNT, CH.J.—The jury have determined in favor of the Plaintiff both the question of the negligence of the Defendants and the absence of negligence on the part of the Plaintiff. There were sufficient facts in evidence to warrant the submission of these questions; and if the legal propositions were properly decided by the Court, the judgment must be affirmed.

It is insisted that, under the circumstances indicated, the corporation of the city of New York has been guilty of no negli-
17

gence. In other words, it has no such absolute duty laid upon it, of repairing the streets, as to render it subject to an action for its neglect; that the duty is modified by the fact that it resides in them as a political power, and that the corporation is endowed with a large discretion as to the expediency of making such repairs. This suggestion is not new. It has been before argued in this Court, and distinctly decided in the negative. The cases of Hutson v. The Mayor (5 Seld. 163), of Conrad v. The Trustees of Ithaca (16 N. Y. R. 158), of Weet v. The Trustees of the Village of Brockport (id. 161), and of Congreve v. Smith (18 N. Y. 79), settle the liability, beyond further discussion, whether the injury arises from some act done by the corporation, or from an omission of duty on their part.

The Appellants further insist that the Plaintiff should have been nonsuited on the ground that she herself was guilty of negligence in walking through the streets unattended and nearly blind. In this connection may also be considered what, it is insisted, was error in the Judge's charge on this branch of the case. It appeared from the evidence that at and previously to the time of the occurrence of the accident, the Plaintiff was suffering from amaurosis, or paralysis of one of her eyes, and the power of vision of both eyes was impaired. She could not distinguish the features of those she met, but she knew that they were persons walking; and a short time before the injury she had been able, as it was testified, to distinguish the color of the coat worn by her physician; and she was in the daily habit of walking the streets as she had occasion. Contradictory evidence was given as to difficulties she met with in the street, on the same day of the accident, and before its occurrence. It was for the jury to ascertain the truth on that subject. The Judge informed the jury that the circumstance that this person was partially blind, and fell into this opening in the daylight, was of no importance, and that it was not important that such a distinction should be made in the present instance.

He adds, the question is this, "whether it was so improper or imprudent for Miss Davenport to have gone into the street unattended in her then condition of sight, that it would be negligence

on her part to do so, sufficient to prevent her from recovering compensation for an injury she might sustain from the negligence of others, while travelling or passing along the streets?" This was the precise question to be determined by the jury, and, I think, should have been submitted as a question of fact, and that it was finally submitted in the above proposition. The streets and sidewalks are for the benefit of all conditions of people, and all have the right, in using them, to assume that they are in good condition, and to regulate their conduct upon that assumption. A person may walk or drive in the darkness of the night, relying upon the belief that the corporation has performed its duty, and that the street or the walk is in a safe condition. He walks by a faith fortified by law; and if his faith is unfounded, and he suffers an injury, the party in fault must respond in damages. So, one whose sight is dimmed by age, or à near-sighted person, whose rays of vision are always imperfect, or one whose sight has been injured by disease, is each entitled to the same rights and may act upon the same assumption. Each is, however, bound to know that prudence and care are in turn required of him; and that if he fails in this respect, any injury he may suffer is without redress. The blind have means of protection and sources of knowledge of which we are not aware; but we are not called upon to give any opinion upon a case of total blindness. The Plaintiff could see persons, and could distinguish outlines. If a post had obstructed her path, the jury might well have said, upon this evidence, that she would have seen and avoided it. Whether a hole in the ground could be distinguished by her, and avoided, was for the jury to say; and whether her power of sight was sufficient to justify her in walking the streets alone, was eminently a question for them. "A reasonable assurance of safety" in passing through the streets when in a good condition, as submitted by the Judge, was a fair test of capacity. That which is assured is made certain, secure, or fixed; and no better standard could be presented than a reasonable certainty of safety in using the streets (Sheridan *v.* Brooklyn, &c., R. R., 36 N. Y. R. 39; Ferris *v.* Union Ferry Co., 36 N. Y. 312; Renwick *v.* N. Y. C.

R. R., 36 N. Y. 132; Ernst *v*. Hudson R. R. R. Co., 35. N. Y. R. 9). I see no objection to the rulings of law in regard to the liability of the Defendant Ruckman.

He was the owner of the house, and had allowed the cellar-way to become and to remain in a dangerous condition. He had recently sublet the premises to one Lamb, who entered into possession a few days before the trial. It was in a dangerous condition when he put his tenant in possession. This does not operate to release the Defendant from his liability. It simply added another party to the negligence. As between those parties, Ruckman was the principal, as it appears by the lease and by the testimony that he agreed to put the premises in repair, but had failed to do so (Congreve *v*. Smith, supra; Dygert *v*. Schenck, 23 Wend. 446).

Both the Defendants were liable to the plaintiff for her damages, and there is no objection to their being joined in one suit.

The judgment should be affirmed, with costs.

All affirm.

                          JOEL TIFFANY,
                                State Reporter.