By the Court, Robertson, Ch. J.
One of the witnesses in this ease, (W. S. Seller,) who saw the whole accident, testified expressly, that as the husband of the plaintiff was stepping on the ground from the steps of the car from which he descended, the express train came down and struck him. This was sufficient proof that he came to his death by the acts of the defendants’ agents. Two witnesses, Mr. LavinsM and Mrs. Zimberland testified that they did not hear any whistle sounded, or bell rung when the express train came down. The former stated he thought he would have heard, it. The latter, who was looking out for her children on the track,» and heard no whistle or bell of that train, always watched that train more than the up train, because the former did not stop. She testified that no whistle was sounded until the express train had passed by the station where the plaintiff was killed. About five or six hundred feet north of that place was a curve on that road. One whistle was given by the express train while approaching that curve, and one after passing it. This was merely a signal to brake up. But such train could not have been stopped before reaching the station, and there was no evidence of any steam whistling or sounding of bells while approaching the cross-road, where the plaintiff’s husband was killed. This was clearly negligence on the part of the defendants. (Renwick v. N. Y. Central Railroad Co., 36 N. Y. Rep. 132.)
It only remains to be determined whether the plaintiff’s husband was guilty of concurrent negligence. That question was fairly submitted to the jury. So that unless the evidence is conclusive upon that question, the verdict must be sustained. There was some conflicting evidence as to *102 the stoppage of the train, from which the deceased descended. Lavinski testified it stopped a very little, and then went on. Heller says the stopping and the stepping off of the deceased was simultaneous. Some other witnesses testified that it was moving until the accident happened. The locomotive of that train had then reached a platform, where such trains usually stopped, and the deceased was injured on a crossing twenty to twenty-five feet from such platform. The learned judge, before whom the issues in this case were tried, submitted to the jury the question whether the decedent’s “ getting off on that side of the car, going toward the passenger depot, and being on that side, and the public highway being just where he got off',” was the exercise of ordinary care and prudence.
It is not negligence to cross a railroad track where there is nothing to notify a traveler on the highway crossing it, that a train of cars is approaching. I do not know that all persons crossing a railroad on a highway are bound to-know the time when a train of cars may be expected according to the time table of such road. They are undoubtedly bound to use, and entitled to rely on their senses to discover any approach of danger, but are entitled to expect that when the sight cannot be used, the means provided by law for warnings addressed to the sense of hearing shall be used by railway trains. (Ernst v. Hudson River R. R. Co., 32 How. 61. S. C. 35 N. Y. Rep. 9.) Under the decision in the case last cited a traveler on the highway crossing a railway, is not bound to look out for a train when the law requires the railway company to give signals of its approach. (Id.) Unless the deceased was imperilled by descending from the cars while in motion, he was guilty of no more negligence in being where he was, when struck by the express train, than if he had been walking across the track. His having previously been a passenger upon another train of cars made no difference. The learned judge charged the jury that if the train had not stopped when the deceased got off, the *103 plaintiff could not recover, and their verdict disposes of that question.
There were five requests made by the counsel for the defendants for instructions to the jury. The second of which was in substance that the express train being visible at a distance of 550 feet, and being nearly due, it was negligence for the deceased not to have looked in the direction in which it was expected, before going on the track. This was directly contrary to the principle adopted in Ernst v. Hudson River R. R. Co. (ubi supra,) and was properly refused. The other requests related to the stoppage of the car when the deceased got off, the blowing of the whistle to brake up, a sight of the express train by the deceased, and the lateness of that train, all of which have been disposed of, except the last, and there was no testimony requiring such instruction. There was no evidence whether the express train was late or not; the engineer simply stated that either it was ahead of time or the up train behind, a fact which had no bearing, except to show that according to the time table, the deceased had a right to expect to have a minute in which to cross, before the train came down. I do not think that the vicinity of the deceased’s residence to the road, or his habit of traveling on it, or familiarity with its time tables, made any difference as to his right to be informed by the usual signals of the approach of a train. A great many reasons might prevent the arrival of the train in time. The law having provided a better means of warning him of danger, he was entitled to rely upon its being complied with.
I think the judgment should be affirmed, with costs.